PEOPLE v WASHINGTON

Docket No. 66910. Submitted October 14, 1983, at Lansing.—Decided November 21, 1983.

Willie B. Washington was convicted of second-degree murder, Genesee Circuit Court, Harland R. Caswell, Acting Circuit Judge, Defendant appealed, alleging several errors. *Held:*

1. Evidence of a prior felony conviction of the defendant was properly admitted for impeachment purposes. A trial court need not compute the ten-year period, beyond which evidence of the prior conviction is inadmissible, by adding a period of time which the defendant spent on parole, which parole was later revoked, to the period of time since the defendant's final release. Furthermore, admission of the evidence of the prior conviction was not objected to at trial on the basis of the age of the conviction.

2. The trial court did not abuse its discretion in conducting an in-chambers examination of a four-year-old witness to determine her competent to testify and then, when the child failed to respond to questioning in the courtroom, reversing his ruling and declaring the child incompetent to testify.

3. The allegedly tainted identification testimony of a witness was harmless where there were many other witnesses whose testimony was far more damning to defendant.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — PAROLE.

A period of time during which a defendant was on parole from imprisonment for a prior felony before being returned to prison for violation of that parole need not be added to the period of time passed since the defendant's final release in order to obtain a total of ten years, which would make evidence of the prior felony inadmissible for purposes of impeachment in a trial on current charges (MRE 609[b]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses § 579.
[2] 81 Am Jur 2d, Witnesses § 92.

2. Witnesses — Child as Witness — In-Chambers Examination.

    A trial judge may properly conduct an in-chambers examination of a young child to determine whether the child is competent to testify as a witness (MCL 600.2163; MSA 27A.2163).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*William L. Grossmann,* for defendant on appeal.

Before: Danhof, C.J., and Bronson and W.R. Peterson,* JJ.

W. R. Peterson, J. Defendant, convicted by jury of second-degree murder, MCL 750.317; MSA 28.549, appeals, asserting various trial errors.

Defendant first asserts that the trial judge erred in denying his motion *in limine* to preclude, and in allowing, his impeachment by proof of a prior felony conviction for larceny in a building. Evidence of the conviction was admissible for impeachment under MRE 609(a). It was for an offense bearing on credibility and dissimilar to the offense charged in trial. The record shows that the trial judge recognized and exercised his discretion in determining the admissibility of such evidence in conformance with the tests set out in *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978). Nonetheless, defendant argues that, notwithstanding its literal terms, MRE 609(b) should be construed to bar the use of defendant's conviction. MRE 609(b) bars use of a prior conviction for impeachment,

---

    * Circuit judge, sitting on the Court of Appeals by assignment.

"if a period of more than ten years has elapsed since the date of the conviction *or of the release of the witness from the confinement imposed for that conviction,* whichever is the later date." (Emphasis added.)

The record shows only that defendant was convicted sometime in 1969, was released from prison on parole, was returned for violation of parole and was finally released from prison on February 19, 1974. The dates of release on parole and of return to prison for violation of parole are not shown. The offense herein occurred on May 17, 1981; the trial concluded on July 1, 1982. Defendant contends that the ten-year period should either commence with his release on parole, or that the period while he was on parole should be added to the period following his final release, which would then total more than ten years. Defendant did not raise the question below, however, and the trial judge was informed only that defendant was released from prison in 1974. We are not constrained to hold that a trial judge must compute the ten-year period under MRE 609(b) by adding any unsuccessful periods of parole to the time after final release from prison, and we surely could not hold it to be an abuse of discretion to fail to do so when the impeachment was not objected to on that ground and the facts were not presented to the court.

Defendant also claims that he was so unfairly prejudiced as to be denied due process by the trial judge's handling of a child witness. Tasha Taylor, three years of age at the time of the murder and four years of age at the time of trial, was an alleged eyewitness to the murder and was called as a prosecution witness. Proceedings were moved to chambers, out of the jury's presence, where the trial judge questioned Tasha to determine if she was competent to testify. MCL 600.2163; MSA

27A.2163. It is not inappropriate that such a preliminary determination should be conducted in chambers and, by so proceeding, a trial judge may well avoid incidents in the presence of a jury which could taint the trial. Although counsel objected at the close of his preliminary inquiry, arguing that Tasha was not a competent witness, we find no abuse of discretion in the court's ruling to the contrary. We note that the court's dialogue with Tasha in chambers (1) was designed to put her at ease; (2) established that she had a good memory of the events one year before; (3) established that she saw defendant shoot "Misty with a gun"; (4) established that she was not repeating what she may have heard from others; and (5) established that she knew the importance of telling the truth. Defense counsel was allowed to cross-examine Tasha in the process. The judge's conclusion, on completion of the preliminary inquiry, that Tasha would be a competent witness was appropriate.

On return to the courtroom, however, Tasha responded only to preliminary questions by the trial judge and then became mute. She nodded when asked if (a year ago) she saw "something happen that was different". Thereafter, a series of questions from the trial judge brought no response and he eventually reversed his ruling that she was competent and she was excused. One such question, "Can you remember what you told me in the next room?", is the basis for the defense claim of prejudice amounting to a denial of due process. The jury was left, it is argued, with the impression that Tasha had given testimony in chambers which was damaging to defendant but which she was too frightened to repeat in the courtroom. While there may be a certain logic to that argument, the same inference of evidence known to the

child could as easily be drawn, absent the court's question, from the mere appearance of Tasha as a prosecution witness.

Moreover, Tasha's on-the-scene excited utterances[1] were reported by other witnesses as an exception to the hearsay rule, which testimony was not controverted. Other witnesses placed Tasha at the scene of the murder with defendant and the victim. It is thus quite out of proportion to suggest that the trial judge's question to her unfairly prejudiced defendant.

Defendant also argues that an in-court identification of defendant by Wendall Meadows was fatally tainted by a prior impermissibly suggestive indentification. Meadows testified that he heard some shots, looked outdoors and saw defendant coming down the street, and that then from his kitchen window he could see the legs of a lady ("Misty", the deceased) who was lying on the ground. He identified defendant in the courtroom.

Meadows's identification of defendant could be doubted for reasons which defense counsel exploited skillfully on cross-examination. Meadows admitted that two years before the murder he had had two strokes which affected his eyesight and that he had gotten corrective eyeglasses thereafter but was not wearing them at the time of the murder. He also admitted that he had been drinking on the day of the murder.

After a weekend recess following Meadows's testimony, defense counsel advised the court that she had been told that prior to Meadows's testimony he had been sitting in the hallway in the courthouse when defendant was brought along the hallway en route to the courtroom and that the prosecuting attorney had also been present in the

---

[1] "Willie B. pushed Misty down", and "Misty killed".

hallway and had asked Meadows if the defendant was the person that he had seen on the day of the murder.

There was no evidentiary hearing held or requested, but the prosecuting attorney acknowledged the incident in a statement which gave two different versions of the event:

> *"Mr. Blanchard:* your Honor, I do recall asking Mr. Meadows in fact if he had seen the defendant at any time while he was sitting in the hallway, and he said he had or thought he had; I think that was his answer. And I don't remember anything about the man that he pointed out, being the defendant, being brought in in handcuffs at the time.
>
> "I know I did ask him if he observed the person or could observe the person or recognize the person that he observed on May 17th, 1981. He said he thought he could. I said, 'Well, have you seen him at all when you were sitting here in the hallway?' And he said, 'I think I have.' "

The conduct of the prosecuting attorney would seem to be such as might well have tainted Meadows's in-court identification. But Meadows was not the only witness to testify to defendant's presence at the scene of the murder contemporaneously therewith; there were many such witnesses, most of whom gave far more damning testimony than did Meadows. If there is a suspicion that Meadows's testimony was impermissibly tainted, it is clear beyond a reasonable doubt that any error in admitting that testimony was harmless. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967); *People v Yopp,* 25 Mich App 69; 180 NW2d 897 (1970).

Affirmed.